DECISION
This matter was retried on the question of damages as a result of a remand from the Rhode Island Supreme Court to the trial court to determine a diminution of value, if any, to the servient estate as a result of severance damages arising from an increase in noise and traffic congestion to the servient estate of plaintiff, Burke-Tarr Furniture Store.
The Supreme Court instructed that the comparable sales method of analysis be employed at trial to determine these damages if any.
In the first trial of June 7, 1996 the defendant Ferland Corporation, presented William E. Coyle, Jr. as an expert real estate appraiser who testified regarding the real estate and property owned by the plaintiff Burke Tarr Company, known as Lot 172 located on Warwick Avenue in the City of Warwick, RI. Mr. Coyle's report was admitted as Exhibit C full in that trial.
Mr. Coyle's report, in his cover letter of January 10, 1996, indicates a total damage figure to the servient estate of $67,000 in round numbers.
The $67,000 was comprised of 3 factors:
 1) Rental Value 1985 — Jan. 1996 of 7.5X218 ft. strip of land = $16,553
 2) Rental Value 1985 — Jan. 1996 of pipeline under right of way = 11,587
 3) Adverse effect on market value = 38,566
 Total $66,706
Mr. Coyle rounds his figure to $67,000 based on these figures as his opinion of total damages allowable to the plaintiff in the first trial.
At the second trial of October 5, 1999, Mr. Coyle again testified for the defendant. For this trial he supplemented his earlier report with a cover letter dated July 29, 1999. This opinion letter was marked as defendant's A in full.
In this letter and his testimony at trial, Mr. Coyle uses the figure of $36,730 which he had earlier determined to be 10% of the fair market value for the plaintiff property. He further testified that the servient estate was diminished by 10%.
At the second trial, he testified that the 10% represented the total severance damages to the servient estate.
He indicated that the 10% was representative of three aspects of damage, namely the presence of the pipeline beneath the right of way, the easement over the servient estate itself, and the impact of traffic on the furniture store. Of this 10% Mr. Coyle indicated that 4% was attributable to traffic, the remaining 6% divided between the other two factors. He reasoned that 40% of $36,370 or $14,692 was the damage attributable to traffic which he rounded up to $15,000 as total damages.
The plaintiff presented Peter M. Scotti who offered testimony based on his evaluation of the subject property pursuant to the comparable sales method. Mr. Scotti, along with Mr. Coyle, was determined to be qualified to testify as a real estate appraiser in these matters.
Mr. Scotti's report (plaintiff's I full in the 10/5/99 trial), and his in court testimony indicated that he considered 6 comparable sales in the Warwick area and after adjustments for size location and use, arrived at a valuation of the plaintiff's property of $505,000. Mr. Scotti then attributed a 10% value of the fair market value of the plaintiff's property to be a reasonable figure for severance damage to the servient estate due to increased traffic and noise. That figure is $50,550.
In a review of the evidence presented by the two real estate experts, the court makes the following findings of fact and conclusions of law.
That the testimony of Peter Scotti regarding the value of the servient estate was arrived at by utilizing the comparable sales method of appraisal, and that it most clearly represents the value of the servient estate, and is more credible and representative than the methodology and reasoning of Mr. Coyle.
Mr. Coyle's figure of valuation of the damages to the servient estate was ultimately determined to be the same as the assessed value of the property as determined by the City of Warwick. Mr. Coyle's testimony in the June, 1996 trial is inconsistent with his testimony and valuation methodology maintained at trial on October 5, 1999.
Mr. Scotti's opinion based upon his education, experience and valuation of damage to the servient estate, and the impact on the servient estate resulting from an increase in traffic and noise in and over the easement was 10% of the value of the servient estate as determined by the comparable sales method. The value determined by Mr. Scotti was $505,000. as of January 1986.
Mr. Coyle's assessment of damages containing three elements, which he maintained he testified to during the earlier trial, did not, in this court's estimation, coincide with the methodology he testified that he utilized in the October, 1999 trial on damages. His testimony that the final adjustment for noise and increased traffic amounted to 4% of the 10% he maintained was the entire adverse impact on the servient estate, and his final figure for damages of $15,000 was based on what the court finds as a fact was an inappropriate value of the servient estate of $367,300 in 1986. Further, the court questions the validity of his testimony in the October, 1999 trial that 6% of the damages he estimated were attributable to the presence of the underground pipeline and the rental value of the right of way, when Mr. Coyle's original report attributes 10% of his assessed valuation of $367,300 or $36,730 to be attributable to traffic, noise and congestion.
"The basis of the value is the adverse effect on the remaining property of Burke-Tarr the measure of damage is the loss in value of the remainder by reason of the installation of a water pipe under a legal easement which resulted in increased traffic, noise and confusion with patrons of the furniture store adjoining the Right of Way. The fair market value of this area effected is not relative to the market value of the dominant easement owner but the limitation of value imposed by the pipe line under the easement which does not conflict with any use retained by the fee owner which is subservient to the Right of Way, except as noted above." Coyle Report, pg. 17.
Accordingly, this court finds as a fact, and as a conclusion of law, that the damage to the servient estate of the plaintiff, based on 10% of the appraised value of the estate of $505,000, is $50,500 plus interest and costs.
This court has not considered the additional interest figure of 10% per annum urged by Mr. Scotti in his calculations, finding that the statutory interest rate of 12% per annum is the appropriate methodology in this case.
The parties may enter an order consistent with this Decision.